IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **RACHEL ELIZABETH JETEL,** ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| and ) | No. |
| ) | |
| **JAMES JOHN JETEL,** ) | |
| ) | |
| *Respondent.* ) | |

### VERIFIED PETITION FOR RETURN OF THE MINOR CHILD IN ACCORDANCE WITH THE HAGUE CONVENTION AND MOTION FOR EXPEDITED RETURN AND HEARING INSTANTER

Petitioner, Rachel Elizabeth Jetel, through her attorneys, BEERMANN LLP, and pursuant to the Convention on the Civil Aspects of International Child Abduction (the "**Hague Convention**" or the "**Convention**") and the International Child Abduction Remedies Act ("**ICARA**"), seeks the immediate return of the parties' minor child, James John Jetel ("**James**"), to the United Kingdom as follows:

### INTRODUCTION

1. Rachel brings this action to compel the immediate return of the parties' four-year-old son, James, to the United Kingdom after the Respondent, James John Jetel ("**JJ**"), without Rachel's knowledge or consent, absconded with James from the parties' home in London and brought him to Illinois, the state the parties

<u>permanently</u> abandoned earlier this year.[1]

2.  While JJ has had a change of heart about his desire to remain married to Rachel, his shifting positions does not entitle him to unilaterally grab the parties' son and rendition him to Illinois. This is the precise type of conduct the Hague Convention is designed to prevent.

3.  As outlined below, over a year ago, the parties made the informed choice to make London their new home. Rachel obtained a lucrative job based in London so she can remain the family's primary breadwinner. The parties and their child sought and obtained visas for the United Kingdom, allowing them to live and work there for three years, through January 2029. They leased their Chicago single-family home to tenants subject to a one-year lease. They signed a two-year lease for a flat in London, a home selected due to its proximity to the outstanding elementary school they purposefully selected for James. And in June 2025, they packed their bags, left Illinois in the rearview mirror, and moved—permanently—to London.

4.  Sometime between Monday, July 28th and Wednesday, July 30th, with Rachel away on a business trip to Washington D.C., JJ took their son James from London and flew to Chicago, ultimately arriving at his parent's house in Richmond, Illinois, presumably because tenants now reside in the property the parties still own in Chicago.

5.  Despite staying temporarily with his parents in McHenry County, Illinois, on July 30, 2025, JJ filed for divorce from Rachel in Cook County, Illinois and

---

[1] Both father and child have the same legal name. For purposes of this Petition, and consistent with the parties' practice, the father will be referred to as *JJ* and the child referred to as *James*.

has since attempted to limit Rachel to 30-minute increments of supervised parenting time with James or only virtual video calls.

6. In a transparent effort to repair the parties' severed ties to this state, JJ has further advised Rachel that he is unilaterally enrolling James in Illinois schools and establishing relationships for James with Illinois medical providers.

## HAGUE CONVENTION AND ICARA

7. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction[2] and the International Child Abduction Remedies Act[3].

8. The Hague Convention has been applied between the United Kingdom and the United States since July 1, 1988.

9. The objectives of the Hague Convention are as follows:

Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
Article 1(b): To ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States.

10. The Hague Convention authorizes a federal district court to determine the merits of a claim for wrongful removal or retention of a child. It does not allow the district court to consider the merits of any underlying custody dispute.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this cause pursuant to 22 U.S.C. §9003(a), which confers jurisdiction to federal courts to hear cases brought under the

---

[2] Oct. 25, 1980, T.I.A.S. No, 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986).
[3] 22 U.S.C. $ 9001-9011 (2014)

Hague Convention, as well as 28 U.S.C. §1331, which conveys jurisdiction to federal courts to hear cases that present a question of federal law.

12. Venue is proper under 22 U.S.C. §9003 and 28 U.S.C. §1391(b) because the minor child is temporarily staying with JJ and his family in Richmond, McHenry County, Illinois, which is located in the Western Division of the Northern District of Illinois.

## STATEMENT OF FACTS

13. JJ and Rachel were lawfully married in October 2014 in Chicago, Illinois.

14. Rachel has always been the family's primary breadwinner and for the first few years of their marriage, the couple resided in Hong Kong incident to her employment. Throughout their relationship, Rachel and JJ have lived in Los Angeles, Hong Kong, New York City, Chicago, and London.

15. In 2017, Rachel and JJ first began exploring a permanent move from Hong Kong to London, England, but were unable to secure visas at that time. They settled in Brooklyn, NY instead.

16. In 2020, following the outbreak of COVID, the family moved to Chicago, where James was born on January 14, 2021.

17. The family purchased a home on North Leavitt Street in Chicago in 2022. Shortly thereafter, the parties began discussing leaving Chicago for London, citing concerns about crime in the former and superior educational opportunities for James in the latter.

18. In early 2024, and with JJ's knowledge and agreement, Rachel applied for a promotion which involved relocation to her employer's London office to meet the organization's in-office policy. Her employer selected her for the position in the summer of 2024.

19. In September 2024, the parties began the process of applying for United Kingdom visas for themselves and James, and began explaining to James that they would be moving to London.

20. During the winter of 2024-2025, the parties secured UK visas (Rachel in January 2025, JJ and James in February 2025), signed a lease for a flat in London (January 14, 2025), and formally applied to the state school system (the UK's version of American public schools) for James (January 15, 2025).

21. Rachel began traveling between Chicago and the parties' rented flat in London in January 2025, bringing the parties' belongings with her on each of several trips.

22. On March 28, 2025, JJ and James came to London, formally activating their visas.

23. Subsequently in April 2025, Rachel interviewed nannies and toured nurseries for James, and ultimately secured both. JJ and Rachel also signed James up for piano camp and other activities in the United Kingdom.

24. The family returned briefly to Chicago following their spring 2025 trip.

25. During this final stay in Illinois, the parties cancelled James' full-time daycare enrollment, terminated the employment of their Chicago nanny, held going

away celebrations with family and friends, gave away unnecessary belongings (including James in the process of donating his toys), and leased out their Chicago property to renters whose tenancy began on July 1, 2025.

26. Rachel and James purchased one-way tickets to London for June 4, 2025. JJ drove with them to the airport that day.

27. Upon arriving in London, James started attending nursery and has been cared for by a regular nanny selected and hired by the parties.

28. Since arriving in London, James has integrated himself into his new community, and formed friendships with his classmates and positive relationships with his caretakers.

29. JJ remained in Chicago for several more weeks to tie up loose ends related to renting the Chicago property and formally moved into London in July 2025.

30. On July 28, 2025, Rachel traveled to Washington, D.C. for a several-day business trip.

31. Without her knowledge or consent, sometime between Monday, July 28 and Wednesday, July 30, 2025, JJ removed James from the parties' flat in London and brought him to his parents' property in Richmond, McHenry County, Illinois, a property where James has never lived.

32. JJ did not respond to Rachel's communications for several days, but instead had his attorneys email Rachel a copy of a Cook County Petition for Dissolution of Marriage on Wednesday, July 30, 2025.

33. Since absconding with James, JJ has unilaterally restricted Rachel's

communications with and access to James, allowing her only 30-60 minutes of supervised time with him per visit at a public playground, and even sometimes only allowing virtual video calls despite her pleas for more access to her son.

34. JJ has further advised Rachel that he intends to unilaterally enroll James in Illinois schools.

35. As evidenced by the foregoing, the minor child and his custodial terms and parenting rights are subject to the jurisdiction of the courts of the United Kingdom, as that is their place of habitual residence. Under the UCCJEA, the United Kingdom is the home state of the child and, as such, Illinois has no child-custody jurisdiction.

36. On August 4, 2025, Rachel filed an application for divorce with the court in London, where both parties habitually reside. This has been accepted by the English court with case number (1754-3048-5922-7995).

**WRONGFUL REMOVAL OF THE CHILD BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION**

37. As set forth in detail above, as of July 30, 2025 at the latest, JJ has wrongfully removed the minor child from the United Kingdom and continues to wrongfully retain the minor child in the State of Illinois, United States, in violation of Article 3 of the Hague Convention and despite Rachel's efforts to have the child returned to the United Kingdom.

38. Rachel never acquiesced or consented to any permanent removal or relocation of the child from the United Kingdom to any place, including the United States, or his living permanently outside of the United Kingdom and the custody of

Document Ref: VUCEY-QJIRO-93AEJ-GATZR    Page 7 of 11

Rachel.

39. JJ's removal of the minor child is wrongful within the meaning of Article 3 of the Hague Convention because:

    a. It is in breach of the rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal and retention; and

    b. At the time of removal or retention, those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

40. Rachel has rights of custody over the child because she is his mother, and he resided with her and JJ until being unlawfully removed from the United Kingdom and retained in Illinois by JJ. JJ's wrongful removal of the child to Illinois is in breach of Rachel's custody rights.

41. On July 28, 2025 and at all times thereafter, Rachel would have otherwise been able to exercise her custody rights over the child in the United Kingdom and within the meaning of Articles 3 and 5 of the Convention but for JJ's wrongful removal and retention of the child in Illinois.

42. The child and the family habitually resided in the United Kingdom within the meaning of Article 3 of the Hague Convention. The parties purposefully severed all connections with Illinois, moved permanently to the United Kingdom, and established new lives there for themselves and their child.

43. Upon information and belief, the minor child is temporarily staying with JJ and JJ's parents at 11501 Heritage Path, Richmond, IL 60071-8702.

44. The child is under the age of 16 and as such, the Hague Convention applies to him.

45. This Petition is filed less than one year from the time JJ wrongfully removed the child from the United Kingdom.

## PROVISIONAL REMEDIES
## 22 U.S.C. §9004 & HAGUE CONVENTION ARTICLE 16

46. Rachel requests that this Court issue an immediate order restraining JJ from removing the child from the jurisdiction of this Court and directing any United States Marshal or other law enforcement officer to bring the child before this Court. Rachel also asks this Court to schedule an expedited hearing on the merits of this Petition.

47. Rachel requests that this Court issue an immediate order preventing JJ from unilaterally enrolling James in Illinois schools or having him treated by an Illinois medical provider absent emergent circumstances.

48. Rachel requests that this Court issue an immediate order to confiscate any and all passports and other travel documentation of the minor child and JJ during the pendency of these proceedings so that the child cannot be removed without court order until he is rightfully returned to the custody of his mother.

49. In an effort to ensure that contact between the child and Rachel is not hampered, Rachel seeks to immediately implement daily, unrestricted physical, telephone and/or video access with the child without supervision until these

proceedings are resolved allowing the child to be rightfully returned to his mother's custody in the United Kingdom.

50. If Rachel's employer allows her to work from the United States until these proceedings are concluded, then she should be granted equal parenting time while present in the United States as well as additional parenting time to compensate for lost time due to JJ's wrongful removal and abduction of the child.

## ATTORNEY FEES AND COSTS
## 22 U.S.C. §9007

51. Rachel has incurred and will continue to incur costs as a result of the wrongful removal of the child by JJ.

52. Rachel respectfully requests that this Court award her all costs and fees, including transportation costs, housing costs in the United States and the like as well as attorney fees, incurred as required by 22 U.S.C. **§**9007.

## NOTICE OF HEARING
## 22 U.S.C. §9003(c)

53. Pursuant to 22 U.S.C. **§**9003(c), JJ shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings,

Respectfully Submitted,
**RACHEL ELIZABETH JETEL**

By:/s/ *Matthew D. Elster*
One of Her Attorneys

Matthew D. Elster
**BEERMANN LLP**
161 North Clark Street, Suite 3000
Chicago, IL 60601
(312) 621-9700
mdelster@beermannlaw.com

## **VERIFICATION**

I, RACHEL ELIZABETH JETEL, declare under penalty of perjury under the laws of the United States of America that the statements contained in the foregoing are true and correct.

_____
RACHEL ELIZABETH JETEL

Executed on August 4, 2025